UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH JACKSON,

    Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Civil Action No. 17-11924

HON.  ROBERT H. CLELAND
U.S. District Judge
HON. R.  STEVEN WHALEN
U.S. Magistrate Judge

# **REPORT AND RECOMMENDATION**

Plaintiff Kenneth Jackson ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income under Title XVI of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion [Doc. #18] be GRANTED and that Plaintiff's motion [Doc. #16] be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on September 16, 2014, alleging disability beginning February 1, 2014 (Tr. 138).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on November 17, 2015 before Administrative Law Judge ("ALJ") David F. Neumann (Tr. 27).  Plaintiff, represented by attorney Erika Ann Riggs, testified (Tr. 330-53), as did vocational expert ("VE") Zachary Matthews (Tr. 53-61).  On March 4, 2016, ALJ Neumann found that Plaintiff was not disabled (Tr. 13-22).  On April 19, 2017, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on June 16, 2017.

## II.  BACKGROUND FACTS

Plaintiff, born September 29, 1971, was 44 at the time of the administrative decision (Tr. 22, 138).  He completed one year of college (Tr. 164) and worked previously as an assembler, laborer, and "water blaster" (Tr. 164).  He alleges disability due to anxiety, depression, and pain and nerve damage to the back, neck, and right arm, hand, and leg (Tr. 163).

### A.     Plaintiff's Testimony

Plaintiff offered the following testimony:

He was right-handed, stood 5' 11," and weighed 240 pounds (Tr. 30-31).  He lived with the mother of his children (Tr. 31).  He used a back brace periodically (Tr. 31).  He had not been incarcerated since sustaining injuries in a March, 2014 car accident but had been

incarcerated as recently as 2011 (Tr. 33).

In March, 2014, his car was "t-boned" by another vehicle, at which time he lost consciousness and was taken to the hospital (Tr. 34). He experienced back, rib, and right knee pain (Tr. 36). After the accident, he attempted to procure work through an employment service but was unable to perform any work due to his condition (Tr. 37). He admitted to marijuana use and occasional alcohol use following the accident (Tr. 37).

Plaintiff experienced temporary relief following a October, 2014 laminectomy but the body pain later returned (Tr. 38). He experienced four "bad" days each week during which time he experienced stiffness and the need to keep his legs elevated three to four times a day for up to 30 minutes (Tr. 39, 43). He was unable to walk more than one block (Tr. 44). He used massage and physical therapy to combat body stiffness (Tr. 39-40). On a bad day, he was unable to sit for more than 20 minutes at a time or stand for more than 30 (Tr. 40, 43). He was unable to lift more than five pounds at one time (Tr. 44). He walked and stretched to cope with the discomfort of sitting (Tr. 40). He experienced lower extremity numbness and difficulty bending (Tr. 41, 44). He took Ambien due to sleep disturbances caused by body pain (Tr. 41). He experienced the medication side effect of drowsiness and took up to five naps every day (Tr. 42).

He was diagnosed with a right shoulder tendon tear the previous year which was treated with physical therapy (Tr. 45). His therapist had recommended shoulder surgery (Tr. 46). The mother of his children, who was paid by insurance services to help him, assisted

him with bathing and personal care tasks (Tr. 46-47). He was unable to put on his shoes without help (Tr. 47). He shopped with his wife around once a month (Tr. 48). He was able to prepare microwave meals but did not perform other household chores (Tr. 49). He had not attended church since the car accident (Tr. 49-50). He relied on his son to take care of the family dog and take out the garbage (Tr. 50). Plaintiff was unable to drive for more than 20 minutes (Tr. 50). He spent part of each day watching television and sent texts occasionally (Tr. 51). He enjoyed reading the newspaper but was unable to read more than two articles before experiencing head and eye pain (Tr. 52). He had recently declined to attend an award ceremony at his son's school due to his dislike of crowds (Tr. 53).

    **B.**    **Medical Evidence**

        **1. Records Related to Plaintiff's Treatment[1]**

In March, 2014, Plaintiff sought hospital treatment following a car accident (Tr. 224). Plaintiff was ambulatory but reported neck, chest, abdominal, and lower back pain (Tr. 224). A mental status evaluation was unremarkable (Tr. 226). He displayed full muscle strength and good coordination (Tr. 226). A chest x-ray was unremarkable (Tr. 229). CTs of the cervical spine, head, and lumbar spine were also unremarkable (Tr. 230, 232-233). The following week, he was referred for physical therapy (Tr. 250, 257). Jawed Agha, M.D. found that Plaintiff was disabled from April 8, 2014 through May 8, 2014 (Tr. 367). In May,

---

[1] Records significantly predating the alleged onset date of February 1, 2014, while reviewed, are omitted from the present discussion.

2014, Plaintiff was prescribed a back brace (Tr. 459). In June and July, 2014, Dr. Agha found that Plaintiff was unable to work due to a lumbar disc herniation and right shoulder pain (Tr. 359-360, 530). June, 2014 records include an MRI showing a moderate disc herniation at L1-L2 and a herniation at L5-S1 causing minimal effacement (Tr. 235, 354, 446, 454, 473). An MRI of the cervical spine showed only mild spondylosis (Tr. 236, 444, 455, 462). An MRI of the right shoulder from the following month showed a "partial non-full-thickness tear of the supraspinatus tendon" (Tr. 443, 475, 491). In August, 2014, Dr. Agha found that Plaintiff was currently disabled from work and required housework services (Tr. 351). The same month, Plaintiff was prescribed Xanax (Tr. 352). Plaintiff reported a "marked decrease in pain" with epidural injections (Tr. 400, 407-412, 438). In September, 2014, Plaintiff reported no improvement from epidural injections but good results from physical therapy (Tr. 238, 393). Treating records note that Plaintiff was scheduled for lumbar spine surgery the following month (Tr. 238).

In October, 2014, Plaintiff underwent a thoracic laminectomy at T12-L1 and L1-L2 (Tr. 382, 484). Postoperative records showed good results (Tr. 382, 384-387). He was prescribed physical therapy (Tr. 478). An MRI from the following month showed "no evidence for a recurrent disc herniation" (Tr. 476, 486). Records by Peter L. Bono, D.O. note Plaintiff's report of an improvement in walking (Tr. 513). Dr. Bono recommended physical therapy and attendant care and replacement services for one month (Tr. 514). December, 2014 records state that Plaintiff intended to reduce his alcohol consumption (Tr. 648).

Treating records from January through March, 2015 by Theophilus O. Ulinfun, D.O. note a normal range of back motion and an unremarkable mental status (Tr. 626-633). February, 2015 records show that Plaintiff continued to receive replacement and attendant care services (Tr. 616). In March, 2015, Dr. Bono noted that he was "pleased" with Plaintiff's progress (Tr. 643). In July, 2015, Jay Inward, Psy.D. performed a neuropsychological evaluation, noting Plaintiff's report of memory problems, anxiety, headaches, and neck pain since the March, 2014 accident (Tr. 585). Plaintiff reported that he had trouble "circumnavigating" but continued to drive (Tr. 587). He reported problems recognizing faces and concentrating (Tr. 586-587). He reported oversleeping, social isolation, and angry outbursts (Tr. 587). Plaintiff admitted that he had been shot in the neck and arm seven years earlier and as a result, experienced Post Traumatic Stress Disorder ("PTSD") (Tr. 587).

In 2015, Plaintiff rated his health as "very good" but admitted that he had used tobacco in the past 30 days (Tr. 641). He reported using psychotropic drugs "rarely" (Tr. 641). July, 2015 nerve conduction studies of the upper and lower extremities were unremarkable (Tr. 571-573, 573-575).

### 2. Non-Treating Sources

In November, 2014, John D. Jeter, M.A. examined Plaintiff on behalf of the SSA, noting Plaintiff's report of long-term depression and anxiety (Tr. 500). Dr. Jeter noted that Plaintiff exhibited clear speech and normal communication skills (Tr. 500). Plaintiff reported

that he could perform light housekeeping chores, prepare simple meals, take care of his personal needs, use a computer, read the newspaper, make and keep medical appointments, and socialize with his family (Tr. 501). He reported that he was incarcerated between 2008 and 2011 (Tr. 501). Plaintiff admitted to recent marijuana use and past cocaine use (Tr. 502). Dr. Jeter noted a logical, organized thought pattern (Tr. 502). Plaintiff reported that he overslept chronically due to depression (Tr. 502). Dr. Jeter observed no symptoms of anxiety (Tr. 504). He noted that Plaintiff was "still healing" from the October, 2014 surgery (Tr. 504).

In December, 2014, Kathy A. Morrow, Ph.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that as a result of depression, Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 70-71). The same month, Twaide Langham, D.O. reviewed the records pertaining to Plaintiff's physical condition, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for around six hours in an eight-hour workday; and push and pull without limitation (Tr. 72). Dr. Langham found that Plaintiff could climb, stoop, kneel, crouch, and crawl occasionally and balance without limitation (Tr. 72-73). Dr. Langham found no other limitations (Tr. 73).

In January, 2016, Cynthia Shelby-Lane, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of "nerve damage" in the right upper and lower extremities and the use of a cane (Tr. 650).  Dr. Shelby-Lane noted that Plaintiff was alert and fully oriented (Tr. 652).  She noted that he was able to get on and off the examining table slowly and exhibited a normal but slow gait (Tr. 652).  Plaintiff demonstrated a full range of hand motion (Tr. 652).  She noted that Plaintiff exhibited "chronic bone and joint pain" requiring "long-term, ongoing care, management and support" (Tr. 653).  She limited Plaintiff to lifting 20 pounds occasionally (Tr. 654).  She found that Plaintif could sit up to six hours and stand or walk for up to three in an eight-hour workday (Tr. 655).  She found that he required a cane to ambulate but could carry small objects with his free hand (Tr. 655, 663).  She limited Plaintiff to frequent (as opposed to *continuous*) manipulative activity and the frequent use of the feet for pushing and pulling (Tr. 656).

Dr. Shelby-Lane found that Plaintiff was capable of occasional postural activities but was unable to climb ladders or scaffolds (Tr. 657).  She precluded all exposure to unprotected heights  and otherwise restricted him to occasional environmental hazards (Tr. 658).  She found that Plaintiff was capable of shopping, traveling without assistance, ambulating by himself, preparing simple meals, using paper/files, and caring for his personal hygiene (Tr. 659).  She found a full range of motion in all joints except for forward flexion of the bilateral hips (Tr. 660).   She found that Plaintiff's neurological abilities were unimpaired (Tr. 662).

### C. The Vocational Testimony

VE Matthews classified Plaintiff's past relevant work as an asbestos removal worker as unskilled and exertionally heavy (medium as performed); production assembler, unskilled/light; and washer, unskilled/medium (heavy as performed)[2] (Tr. 59). The ALJ then described a hypothetical individual of Plaintiff's age, education and work history:

> [W]ould require work which is simple, routine and repetitive work at an SVP: 1 or 2 ; who could lift - - only lift or carry five pounds frequently and ten pounds occasionally; who could stand or walk with normal breaks for a total of one hour in an eight-hour workday; who could sit with normal breaks for a total of two hours in an eight-hour workday.[3] Who could perform pushing and pulling motions with their upper and lower extremities within whose weight restrictions; who could perform each of the following postural activities, occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling. Given those restrictions, could such a person perform any of the Claimant's past work that you've identified? (Tr. 59-60).

The VE testified that the above restriction would preclude all gainful employment (Tr. 60).

The ALJ then posed a second hypothetical question:

> [W]ork which is simple/routine/repetitive work at an SVP: 1 or 2: who could only lift or carry five pounds frequently and ten pounds occasionally; who could stand or walk with normal breaks for a total of one hour in an eight-hour

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[3] Both Specific Vocational Preparation ("SVP") 1 and 2 are classified as unskilled work. SSR 00–4p, 2000 WL 1898704, *3 (December 4, 2000).

> workday; who could sit with normal breaks for a total of seven hours in an eight-hour workday; who could perform pushing and pulling motions with their upper and lower extremities within those weight restrictions; no overhead work with the right upper extremity; and who could perform each of the following postural activities occasionally, climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling (Tr. 60).

The VE testified that while the second set of restrictions precluded Plaintiff's past relevant work, the individual could perform the unskilled, sedentary work of an information clerk (55,000 positions in the national economy); office clerk (69,000); and auditing clerk (53,000) (Tr. 61). The VE stated that if the individual described in the second hypothetical question could carry 10 pounds frequently and 15 pounds occasionally and stand/walk for two out of eight hours, the job numbers would remain unchanged (Tr. 61). The VE testified that the need to be off task for an entire hour each workday would preclude all employment (Tr. 61).

### D.     The ALJ's Decision

Citing the medical records, ALJ Neumann found that Plaintiff experienced the severe impairments of "tear of the supraspinatus tendon of the right shoulder; cervical spine spondylosis; lumbar degenerative disc disease; obesity; and depression" but that none of the conditions met or medically equaled any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 15-16). The ALJ found that Plaintiff retained the Residual Functional Capacity for sedentary work with the following additional limitations:

> [C]an stand and walk for a total of two hours in an eight-hour workday; can sit for six hours total in an eight-hour workday; can lift, carry, push, and pull ten pounds frequently and fifteen pounds occasionally; can never perform overhead work with the right upper extremity; can occasionally climb, balance, stoop, kneel, crouch, or crawl; and can perform simple, routine, and repetitive work at a[n] SVP of 1 or 2 (Tr. 17).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform any past relevant work, he could perform the unskilled, sedentary work of an information clerk, office clerk, and ticket checker[4] (Tr. 21, 61).

The ALJ found Plaintiff's claims of limitation "not entirely credible" (Tr. 19). The ALJ noted that Plaintiff's testimony that he was unable to care for himself was contradicted by his reports to others that he was independent in self care and was able to cook, clean, shop, and manage his finances (Tr. 20). The ALJ adopted Dr. Shelby-Lane's consultative finding and Dr. Langham's non-examining finding that Plaintiff was capable of a range of sedentary work (Tr. 20). As to the psychological limitations, the ALJ adopted Dr. Morrow's finding that Plaintiff could perform unskilled work (Tr. 20). The ALJ accorded "little weight" to a treating finding that Plaintiff had a "total disability," noting that the ultimate determination of disability was reserved to the Commissioner (Tr. 20).

---

[4] Although the job title "ticket checker" differs from the VE's testimony that the third job was "auditing clerk," the *Dictionary of Occupation Title* job code, 219.587-010 cited by the ALJ is identical the code provided by the VE (Tr. 21, 61). DOT job code 219.587-010 corresponds with the job title "Parimutuel-ticket Checker." https://occupationalinfo.org/21/219587010.html. (Last visited July 11, 2018). Assuming that the VE's testimony regarding this job title is erroneous, the first two findings, information clerk and office clerk constitute a significant number of jobs to satisfy the Step Five finding.

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).  The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### Substantial Evidence Supports the ALJ's Step Five Determination

In his sole argument for remand, Plaintiff contends that the RFC, based on the ALJ's second hypothetical question to the VE, overstates his work-related abilities. *Plaintiff's Brief,* 12-14 (*citing* Tr. 17, 60), *Docket #16,* Pg ID 724. He argues that the ALJ's failure to include all of his relevant limitations in the hypothetical question to the VE invalidates the corresponding job findings and ultimate non-disability finding. *Id.*

It is well settled that vocational testimony given in response to a question that does include all of a claimant's relevant limitations does not constitute substantial evidence. *Varley v. HHS*, 820 F.2d 777, 779 (6th Cir. 1987); *Teverbaugh v. CSS*, 258 F.Supp.2d 702,

706 (E.D. Mich. 2003) (Roberts, J)(reversible error for ALJ to rely upon unsupported job findings in making a Step Five determination). Plaintiff contends that the ALJ erred by failing to adopt Dr. Jeter's consultative finding that "extra time and rest" were required to complete activities of daily living due to "pain, movement, fatigue, motivation, and depression" (Tr. 504). Plaintiff argues that the finding that he required extra time to perform everyday activities stands at odds with ALJ's conclusion that he could perform full-time work at a normal pace. *Plaintiff's Brief* at 13.

Plaintiff's argument that the ALJ ought to have adopted this portion of Dr. Jeter's report fails for multiple reasons. First, Dr. Jeter did not observe Plaintiff performing activities of daily living. Dr. Jeter's remark that Plaintiff required "extra time" is based wholly on Plaintiff's claims regarding his regular activities (Tr. 501, 504). Moreover, Dr. Jeter, a psychologist, performed an assessment of Plaintiff's psychological, not physical limitations. Thus, his remark that Plaintiff required "extra time" to perform tasks due to physical limitation was outside the scope of his review. Even assuming that the "extra time" comment was based on Dr. Jeter's own observations, in the next sentence, he noted that Plaintiff was "still healing from surgery of two months earlier" (Tr. 504). Assuming that the comment could be construed as an evaluation of Plaintiff's current physical condition, it referred to temporary, post-operative rather than long-term physical limitations (Tr. 504).

The contention that Dr. Jeter endorsed the Plaintiff's allegations of psychological disability also stand at odds with Dr. Jeter's conclusion that Plaintiff experienced "no difficulty" in the ability to understand or carry out simple directions, perform repetitive, routine, simple tasks," or "comprehend complex tasks" (Tr. 504). Dr. Jeter concluded that Plaintiff's attention and memory were "within normal limits" (Tr. 504). The ALJ correctly noted that Dr. Jeter found that Plaintiff was capable of "simple work" (Tr. 20). While Plaintiff appears to argue that Dr. Morrow's non-examining findings (adopted by the ALJ) rely on Dr. Jeter's observations, both Dr. Morrow and Dr. Jeter found that Plaintiff was capable of unskilled work (Tr. 20, 71, 74, 504). It is unclear how either physician's finding supports Plaintiff's disability claim.

Again, assuming for the sake of argument that Dr. Jeter's comments regarding the physical limitations could be construed to refer to long-term impairments, substantial evidence otherwise supports the finding that Plaintiff could perform a significant range of sedentary work. The ALJ accorded "significant weight" to Dr. Shelby-Lane's January, 2016 finding that Plaintiff could perform sedentary work despite some degree of postural, manipulative and environmental limitation (Tr. 653-662). While Plaintiff faults the ALJ for rejecting a treating "opinion" of "total disability," the ALJ correctly noted that the ultimate question of whether a claimant is disabled "is reserved to the Commissioner" (Tr. 20); *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). The ALJ did not err in rejecting the disability pronouncement by the treating source.

Plaintiff also argues that his own testimony, coupled with Dr. Bono's May, 2015 finding of the need for ongoing attendant care and replacement services, supports the finding that he continues to experience disability. *Plaintiff's Brief* at 14-15 (*citing* Tr. 46-47, 536). However, the ALJ correctly observed that the testimony of extreme limitation stood at odds with Plaintiff's report of medical improvement following the laminectomy (Tr. 20). The ALJ's findings are consistent with my own review of the records showing that in December, 2014, Plaintiff reported that he was able to groom himself, make his own appointments, and engage in "some" childcare activity (Tr. 501). Likewise, the treating records from January through March, 2015, note a normal range of back motion and an unremarkable mental status (Tr. 626-633). Plaintiff's contention that the ALJ was required to include properly discounted evidence in the hypothetical question is without merit. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to credit rejected claims in question to VE or by extension, in the ultimate RFC) .

In closing, my recommendation to uphold the ALJ's findings should not be read to trivialize limitations brought on by the March, 2014 accident. Nonetheless, the determination that he was not disabled is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI. CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Doc. #18] be GRANTED and that Plaintiff's motion [Doc. #16] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 12, 2018                    s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE
                                        JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on July 12, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 12, 2018.

                                                  s/Carolyn M. Ciesla
                                                  Case Manager for the
                                                  Honorable R. Steven Whalen